IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **ROBERT J. JESENIK,** <br> **N. SCOTT GILLIS,** <br> **ANDREW N. MacRITCHIE, and** <br> **BRIAN K. RICE**, <br><br> Defendants. | Case No. 3:20-cr-228-SI <br><br> **OPINION AND ORDER** |

Billy J. Williams, United States Attorney, and Scott E. Bradford and Ryan W. Bounds, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Ruben L. Iniquez and Bryan Francesconi, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, OR 97204. Of Attorneys for Defendant Robert J. Jesenik.

William Douglas Sprague, COVINGTON & BURLING LLP, Salesforce Tower, 415 Mission Street, Suite 5400, San Francisco, CA 94105; and James T. McDermott, BALL JANIK LLP, 101 SW Main Street, Suite 1100, Portland, OR 97204. Of Attorneys for Defendant N. Scott Gillis.

Michael Tremonte and Alexandra G. Elenowitz-Hess, SHER TREMONTE LLP, 90 Broad Street, 23rd Floor, New York, NY 10004; and Samuel C. Kauffman, KAUFFMAN KILBERG LLC, 1050 SW Sixth Avenue, Suite 1414, Portland, OR 97204. Of Attorneys for Defendant Andrew N. MacRitchie.

Angelo J. Calfo, Patricia Anne Eakes, and Damon Elder, CALFO EAKES LLP, 1301 Second Avenue, Suite 2800, Seattle, WA 98101. Of Attorneys for Defendant Brian K. Rice.

Troy Greenfield and Lawrence R. Ream, SCHWABE, WILLIAMSON & WYATT PC, 1420 Fifth Avenue, Suite 3400, Seattle, WA 98101; and Alex I. Poust, SCHWABE, WILLIAMSON & WYATT PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Limited Purpose Intervener Receiver and Receivership Entity in *SEC v. Aequitas Management, LLC, et al.*, No. 3:16-cv-438-JR (D. Or.).

**Michael H. Simon, District Judge.**

In this criminal case, a grand jury indicted Defendants Robert J. Jesenik, N. Scott Gillis, Andrew N. MacRitchie, and Brian K. Rice on one count of conspiracy to commit mail and wire fraud, 19 counts of wire fraud, one count of conspiracy to commit money laundering, and ten counts of money laundering. The grand jury also indicted Defendants Jesenik and Gillis on one count of bank fraud, one count of conspiracy to commit bank fraud, and one count of making a false statement on a loan application. These charges are all related to Defendants' alleged activities with the Aequitas group of companies, including Aequitas Management LLC, Aequitas Holdings LLC, Aequitas Commercial Finance LLC, Aequitas Capital Management Inc., and Aequitas Investment Management LLC (collectively, Aequitas). As alleged in the indictment, Defendants used Aequitas Commercial Finance LLC and other related companies to solicit investors through the issuance of promissory notes and interests in Aequitas-created investment funds, many of which were purportedly backed by trade receivables.

As more fully explained below, in a separate civil action brought by the Securities and Exchange Commission (SEC), the U.S. District Court for the District of Oregon appointed a receiver to control the assets of Aequitas, including Aequitas's books and records. Now before the Court in this criminal case is the Receiver's Motion to Intervene for Limited Purposes, Motion to Expand the Scope of the Protective Order, and Motion to Claw Back Privileged Documents. ECF 57. For the reasons stated below, the Court grants in part and denies in part the Receiver's motion.

# BACKGROUND

On March 10, 2016, the SEC commenced a civil action in the District of Oregon, captioned *Securities and Exchange Commission v. Aequitas Management, LLC, et al.*, No. 3:16-cv-438-JR (D. Or.) (the Receivership Case). Receivership Case, ECF 1 (Complaint).[1] Along with its complaint, the SEC filed a stipulation between the SEC and the Aequitas entity defendants, requesting a preliminary injunction and the appointment of a receiver. Receivership Case, ECF 2. On March 16, 2016, the district court entered a Stipulated Interim Order Appointing Receiver. Receivership Case, ECF 30. In that interim order, the court appointed Ronald Greenspan as receiver (Receiver) of the named Aequitas entity defendants and their subsidiaries and majority-owned affiliates (collectively, the Receivership Entity). *Id*. In addition to freezing the assets of the Receivership Entity, the court authorized the Receiver, among other things, to take possession of all books and records of the Receivership Entity. *Id*. The court also authorized the Receiver to investigate, prosecute, defend, intervene in, or otherwise participate in actions in any state, federal, or foreign court or proceeding to recover or conserve property of the Receivership Entity. *Id*. On April 14, 2016, the court entered a final Order Appointing Receiver, making the previously entered interim order no longer temporary. Receivership Case, ECF 156.

As the court-appointed Receiver explains in his declaration filed in this criminal prosecution in support of the Receiver's pending motions, at the outset of the Receivership Case, the Receiver and his team assembled a consolidated database (Consolidated Database) for use by all civil and criminal litigants. ECF 59, ¶ 2 (Decl. of Ronald F. Greenspan). In creating the Consolidated Database, the Receiver's objectives were to (1) provide access to documents in the

---

[1] Unless otherwise expressly stated, all references to electronic case file (ECF) documents without more refer to materials filed and docketed in this criminal prosecution. Documents filed in the Receivership Case are expressly identified as being filed in that matter.

PAGE 3 – OPINION AND ORDER

care, custody, or control of the various corporate entities comprising the Receivership Entity immediately before the appointment of the Receiver; and (2) limit unnecessary administrative expense associated with responding to numerous discovery requests that would deplete the funds available to be distributed to the Aequitas investors. *Id*.

The Receiver knowingly granted the Government access to a database file within the Consolidated Database that the Receiver refers to as "File A." File A consists of documents containing personal identifying information and personal health information, various forms of private financial information, as well as computer system passwords, server and network device logs, system configuration data, delimited data sets, project management documents, and encryption keys. *Id*. at ¶ 3. Receiver explains that when he granted the Government access to File A, the Receiver assumed that none of the documents in File A would ever be considered relevant or even likely to lead to the discovery of relevant evidence in any civil or criminal proceeding and, accordingly, the Government would not disclose those documents to any other parties. *Id*. ECF 59, ¶ 4.

As the Receiver also states, there is a second database file within the Consolidated Database, which the Receiver refers to as "File B." File B consists of documents created or transmitted between March 16, 2016 and March 6, 2017, after the district court appointed the Receiver on March 16, 1016. Among other things, File B contains email communication by and between the court-appointed Receiver (and his non-legal representatives) and attorneys engaged by the Receiver and approved by the court in the Receivership Case to advise and represent the Receiver and the Receivership Entity. *Id.*

According to the Receiver, File B was inadvertently created within the Consolidated Database as a result of an operation of a computer program, or protocol, used by FTI Technology

(FTI Tech), the third-party vendor contracted by the Receiver in accordance with the Order Appointing Receiver. *Id*. at ¶ 5. The Receiver states that he never intended to include documents created after his appointment on March 16, 2016 in the Consolidated Database that would be made available to the Government, civil litigants, and any criminal defendants. *Id*. at ¶ 6. When FTI Tech recognized that documents created after the Receiver's appointment had been inadvertently included in the Consolidated Database, a representative of FTI Tech advised the Receiver of that error. *Id*. at ¶7. Neither the Receiver nor any member of his team, however, understood the communication from FTI Tech to mean that the Government already had been granted access to documents in the Consolidated Database created after the Receiver's appointment. *Id*. at ¶ 8. Further, the Receiver believed that the access restrictions intended to have put in place at that time would govern all future access by any third party. *Id*. FTI Tech created a database subset file, identified as "File B," and the Receiver instructed FTI Tech to deny access to File B to all third parties. *Id*. at ¶ 9.

Imbedded in an email responding to the instructions to deny access to File B, a representative of FTI Tech inquired whether the direction to deny access to all third parties included representatives of the Government. *Id*. at ¶ 10. Neither the Receiver nor any other recipients of that email inquiry, however, noticed or responded to that specific inquiry. *Id*. at ¶ 11. Without inquiring further and unbeknownst to the Receiver and his team, FTI Tech then granted the Government access to File B. *Id*. at ¶ 12. The Receiver states that at no time did he ever intend to waive the attorney-client privilege afforded to communications with his counsel. *Id*. at ¶ 13. The Receiver adds that he is charged with marshalling the assets of the Receivership Entity, including claims against various parties, many of which have not yet been litigated, for the ultimate benefit of the Aequitas investors. *Id*. at ¶ 14. According to the Receiver, an

abrogation of the attorney-client privilege would undermine his efforts to maximize recoveries for the Aequitas investors. *Id*.

In support of the Receiver's pending motions, an attorney representing the Receiver provided additional information. After the indictment in this case was unsealed on August 11, 2020, the Government inquired about obtaining for Defendants Jesenik, Gillis, MacRitchie, and Rice access to the Consolidated Database. ECF 58, ¶ 2 (Decl. of Troy Greenfield); ECF 12 (Order Unsealing Indictment). Counsel for all Defendants previously had been granted access to the Consolidated Database, other than File A and File B. *Id*.[2]

On August 25, 2020, the Government sent an email to the Receiver asking whether he could determine whether the Government had accessed any documents in the Consolidated Database to which the Defendants had been denied access. *Id*. at ¶ 4. In that email, the Government requested that any documents to which the Government had been given access also be made available to Defendants in this criminal case, at least "barring some objection of the Receiver." *Id*. The Receiver, through counsel, responded to the Government that the vendor managing the database had not previously shared information regarding which documents had been viewed by any of the parties who had been afforded access to the Consolidated Database. *Id*. at ¶ 5. While the Receiver's counsel was working with the vendor to determine whether it was possible to identify documents previously accessed by any party in this matter, the Government and counsel for the Defendants began communicating regarding the terms of a protective order that might address the Receiver's concerns about File A and File B. *Id*. at ¶ 6.

---

[2] In January 2018, the Receiver also granted to previous counsel for Defendant Jesenik access to the Consolidated Database. ECF 58, ¶ 3.

On or about August 31, 2020, the Receiver restricted all access to Files A and B. *Id*. at ¶ 9. From that point forward, neither the Government nor any Defendant in this criminal case has been able electronically to access either File A or File B maintained by the Receiver. To preserve Defendants' strategic analyses, the Court has not inquired of any Defendant whether any Defendant has copied, noted, summarized, or otherwise retained any document or information from anything in File A or File B before those files were locked down.

On September 10, 2020, the Government first disclosed to the Receiver that the Government had made an earlier discovery production to counsel for Defendants Jesenik and Gillis and that this production would have included documents from File B. *Id*. at ¶ 10. Upon learning of the Government's production of documents from File B to counsel for Defendants Jesenik and Gillis, on September 12, 2020, counsel for the Receiver issued a notice of inadvertent disclosure to counsel for Defendants Jesenik and Gillis as well as the Government, under Rule 502 of the Federal Rules of Evidence and Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure. ECF 58 at ¶ 11. After the Receiver's counsel issued the first notice of inadvertent disclosure, the Government advised that it had also made another disclosure of documents that would have contained File B to counsel for Defendant Rice. *Id*. at ¶ 12. On October 1, 2020, the Receiver's counsel issued a second notice of inadvertent disclosure to Defendant Rice and the Government, citing the same rules. *Id*. at ¶ 13.

On September 16, 2020, the Government moved for entry of a Protective Order. ECF 49. The Court entered that Protective Order the same day. ECF 50. Counsel for the Receiver, however, requested from the Government and Defendants that the protective order include greater safeguards for the information contained in File A than previously had been included. ECF 58 at ¶ 7.

The Receiver's counsel also informed the Government that the Government inadvertently had been given access to the documents in File B. *Id*. at ¶ 8. The Receiver continued his efforts to determine what the Government had accessed and downloaded as well as what the Government had made available to any Defendant in this case. *Id*. at ¶ 14. On September 17, 2020, the Government provided an index with MD5 hash values and the corresponding production Bates numbers. *Id*. at ¶ 15. With that data and logical search terms, the Receiver's vendor managing the Consolidated Database concluded that the Government's production to at least some Defendants in this case included more than 1,000 documents that the Receiver considers likely to be privileged, largely comprised of email communications and attachments between the Receiver and his counsel. *Id*. at ¶ 16.

During a telephonic status conference on September 28, 2020, the Government generally advised the Court of these issues. The Court then directed counsel to confer among each other and with counsel for the Receiver to determine whether a stipulated resolution could be obtained. The Court added that if no agreement could be reached, the Receiver should file a motion in this criminal case, asking for whatever relief the Receiver thought necessary and appropriate to protect the Receiver's interests. Counsel for the Receiver communicated with all counsel for the Government and Defendants, advising of the Receiver's intention to file such a motion.

At the request of counsel for Defendants, the Receiver refrained from filing a motion to allow for further engagement on the issues. *Id*. at ¶ 17. In addition, the Receiver responded to certain questions from Defendants' counsel regarding the Government's inadvertent access to a portion of the Consolidated Database containing privileged communications. Among other things, the Receiver explained that any factual findings by the Receiver relating to any Defendant in this criminal case, together with references to all supporting facts and documents,

are set forth in the Receiver's Report Regarding the Investigation of the Receivership Entity's Business Conduct. *Id.*, referring to Receivership Case, ECF 663 (filed November 21, 2018).

On November 13, 2020, the Receiver filed the three motions that are now before the Court. ECF 57. On November 30, 2020, the Court held a telephonic status conference with the Government, counsel for all Defendants, and counsel for the Receiver. ECF 61. The Court asked whether the Government or any Defendant objected to the Receiver's motion to intervene for limited purposes, and no party objected. The Court also inquired whether the Government or any Defendant objected to the Receiver's motion to expand the scope of the protective order to address issues relating to File A, and no party objected. Finally, the Court discussed the Receiver's motion to "claw back" privileged documents. Here, Defendants objected, at least without receiving more information from the Receiver. The Government took no position. After discussion, the Court stated that it would prepare and circulate a tentative written opinion and order and would discuss these issues again with the parties, including the Receiver, during a telephonic status conference on December 17, 2020. On December 8, 2020, the Court sent by email a tentative copy of this Opinion and Order, along with a tentative copy of a First Amended Protective Order, to counsel for the Government, Defendants, and the Receiver.

## DISCUSSION

**A. Receiver's Motion to Intervene for Limited Purposes**

The Receiver has moved, under Rule 24 of the Federal Rules of Civil Procedure, to intervene in this criminal case "solely for the limited purpose of amending the Protective Order and securing the return or destruction of inadvertently disclosed privileged communications." ECF 57 at 9. As noted, neither the Government nor any Defendant opposes the Receiver's limited motion to intervene. The Federal Rules of Civil Procedure, however, do not apply in criminal actions. *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in all *civil* actions and

proceedings in the United States district courts, except as stated in Rule 81.") (emphasis added). Further, the Federal Rules of Criminal Procedure provide no path to intervention in a criminal matter by a third-party.

Federal courts, however, possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)); *see also* Jeffrey C. Dobbins, *The Inherent and Supervisory Power*, 54 Ga. L. Rev. 411, 442-43 (2020).[3] More specifically, in *Perlman v. United States*, 247 U.S. 7 (1918), the Supreme Court held that the owner of exhibits could intervene in a criminal grand jury proceeding to object to the disclosure of those exhibits based on privilege, even when the exhibits were in the possession of a third party. "The *Perlman* rule has also been applied in a trial, rather than grand jury context, to allow an intervention and appeal to challenge the production of subpoenaed documents." *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979) (citing *United States v. Nixon*, 418 U.S. 683, 688, 690-92 (1974)).

Federal courts apply "the same principle in permitting intervention for the assertion of claims of privilege when subpoenas are addressed to third parties. *RMI Co.*, 599 F.2d at 1186. "Thus, it is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders, and if protection is

---

[3] *See generally United States v. Nobles*, 422 U.S. 225 (1975) (holding in a criminal case that trial courts have the inherent power to order discovery of defense investigator's summary of interviews with key prosecution witnesses before allowing testimony by the investigator about those conversations, even though no rule provided for that discovery and the Federal Rules of Criminal Procedure preclude such discovery before trial); *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (noting in a criminal case that "federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively" and holding that trial courts have the inherent power to order the government to disclose witness lists well in advance of criminal trials) (simplified).

PAGE 10 – OPINION AND ORDER

denied, seek immediate appellate review." *Id.*; *see also United States v. Crawford Enters., Inc.*, 735 F.2d 174, 176 (5th Cir. 1984) ("As a general proposition, persons or corporations which are adversely affected by the disclosure of privileged material have the right to intervene, assuming standing, in pending criminal proceedings to seek protective orders, and if denied, to seek immediate appellate review."); *United States v. Martoma*, 962 F. Supp. 2d 602, 605-06 (S.D.N.Y. 2013) ("A third-party's reasonable assertion of privilege with respect to documents to be produced in a criminal action is sufficient grounds on which to grant the third-party's motion to intervene and to consider the merits of that party's application."); *United States v. Bergonzi*, 216 F.R.D. 487, 492 (N.D. Cal. 2003) (granting third party's unopposed motion to intervene in criminal action to challenge on grounds of privilege the production by the Government to defendants of third party's subpoenaed documents). Based on the Court's inherent authority, the Court grants the Receiver's motion to intervene in this criminal case solely for the limited purposes of seeking amendment to the Protective Order previously entered and requesting protection of communications that the Receiver contends are privileged.

**B. Receiver's Motion to Expand the Scope of the Protective Order**

On September 16, 2020, the Court entered a Protective Order in this case on the motion of the Government. ECF 50. That Protective Order applies to what the Government defined in its motion as "Personal Information" and "Financial Information." The Protective Order, however, does not expressly apply to what the Receiver calls "Sensitive Aequitas IT Information," and the Receiver has moved for an order amending the Protective Order to include that additional information. ECF 57 at 9-10. Neither the Government nor any Defendant opposes the Receiver's motion to expand the scope of the Protective Order to include Sensitive Aequitas IT Information. The Court grants the Receiver's motion to expand the scope of the Protective Order. The Court will separately enter a First Amended Protective Order, consistent with the Receiver's motion.

### C. Receiver's Motion to Claw Back Privileged Documents

Finally, the Receiver moves the Court for an order requiring the parties to this action to destroy or return all documents containing privileged communications. ECF 57 at 10. According to the Receiver, the vendor managing the Receiver's Consolidated Database has concluded that the Government downloaded and produced more than 1,000 documents that the Receiver contends are likely privileged, comprised of email communications and attachments between the Receiver and his counsel. *Id*. The Receiver adds that conducting a thorough privilege review would be costly and deplete the assets of the Receivership Entity. *Id*. at 10-11. The Court is sensitive to the Receiver's concerns. The Receiver not only is a third-party in this criminal case, he also has been tasked by the district court in the Receivership Case with attempting to recover or conserve property of the Receivership Entity for the benefit of investors allegedly defrauded by Defendants.

The Receiver also argues that he did not intentionally waive his attorney-client privilege and that any disclosure was inadvertent and thus involuntary. In the Ninth Circuit, "when there has been an involuntary disclosure, the privilege will be preserved if the privilege holder has made efforts 'reasonably designed' to protect the privilege." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). This preservation of privilege has since been codified in the Federal Rules of Evidence. That rule provides that an inadvertent disclosure does not constitute a waiver if the holder of the privilege took reasonable steps to prevent disclosure and promptly took reasonable steps to rectify the error. Fed. R. Evid. 502(b).

As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies, and that the privilege has not been waived, rests with the party asserting the privilege. *See, e.g.*, *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). Whether the attorney-client privilege has been waived is a mixed question of fact and law.

*United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992). Based solely on the evidence presented in the declarations filed by the Receiver and his counsel, the Court conditionally finds that there was never any intent by the Receiver to waive the attorney-client privilege or any work product protection, the Receiver took reasonable steps to prevent disclosure, any disclosure was inadvertent, and the Receiver promptly took reasonable steps to rectify the error.

Defendants, however, argue that more information from the Receiver would be helpful in this analysis. Defendants contend that they need to know, among other things: (1) when FTI Tech created File B within the Consolidated Database; (2) when FTI Tech advised the Receiver that documents created after the Receiver's appointment were included in the Consolidated Database; (3) when the Receiver instructed FTI Tech to deny all third parties the ability to access File B; (4) when FTI Tech asked the Receiver whether his direction to deny access to all third parties included the Government; (5) when FTI Tech granted the Government access to File B; and (6) when FTI Tech informed the Receiver that the Government had been inadvertently granted access to File B. Defendants assert that without this information the Court cannot determine whether the Receiver took reasonable steps to prevent disclosure and whether the Receiver promptly took reasonable steps to rectify the error. The Court disagrees, based primarily on the relatively short period of time between the unsealing of the indictment in this case, August 11, 2020, and the date when the Receiver directed FTI Tech to restrict all access to Files A and B until this issue could be resolved, August 31, 2020.

The Court recognizes, however, that a complete and thorough analysis of this issue might benefit from knowing some or all of information identified by Defendants. Such a comprehensive analysis, however, is not needed at this time to solve the problem currently before the Court. That is why the Court only conditionally makes the findings stated above. If it

PAGE 13 – OPINION AND ORDER

ever becomes necessary for the Court to perform a comprehensive analysis on the question of whether the Receiver has waived his attorney-client privilege, the Court will consider all arguments presented at that time and all requests for relevant discovery. For now, however, the Court need not perform such a comprehensive analysis to ensure that Defendants receive all discovery to which they might be entitled while also protecting the Receiver and the Receivership Entity from the risk of unrestricted access to privileged communications and the risk of wasteful depletion of Receivership Entity assets.

Finally, the Receiver argues that documents created after the appointment of the Receiver, particularly any documents containing privileged communications between the Receiver and his counsel, are not likely to be relevant in this criminal case. The Court generally agrees. The Court, however, is sensitive to the needs of Defendants and must ensure that Defendants have every reasonable opportunity to discover and obtain any material relevant to a Defendant's guilt or punishment or favorable to a Defendant on the issue of guilt or punishment when the Government has had possession, custody, or control over that material. *See Brady v. Maryland*, 373 U.S. 83 (1963); *see also* Due Process Protections Act, Public Law No. 116-182 (Oct. 21, 2020) (amending Rule 5(f) of the Federal Rules of Criminal Procedure). Here, the Government previously had access to the documents contained in File B. Thus, it is important to ensure that Defendants have fair access to *any* potential *Brady* material contained within File B.

To protect the legitimate interests of both the Receiver and all Defendants, the Court Orders the Receiver to make available to Defendants and the Government all documents contained within File B, including documents presumptively protected by the attorney-client privilege, under the following conditions, protections, and restrictions:

1.      Neither a Defendant nor the Government may reveal or disclose the contents of any apparently privileged communication found in File B without the express prior leave of Court;

2.      If a document found in File B also is found in the Consolidated Database outside of File B, that document is not apparently privileged, at least absent further order of the Court;

3.      Before seeking leave of Court to disclose the contents of any apparently privileged communication found in File B, the party seeking disclosure shall first present that document to the Receiver or his counsel, and neither the Receiver nor his counsel may disclose to anyone else (including any other party in this criminal case) that the Receiver has been asked about a particular communication;

4.      If the Receiver confirms in writing to the party seeking disclosure that the Receiver is not asserting (or continuing to assert) attorney-client privilege over any specific communication, the party seeking disclosure of that communication shall then be free to use and disclose that communication in any manner in which that party chooses;

5.      If the Receiver states in response to an inquiry that he is not asserting (or continuing to assert) attorney-client privilege over any specific communication, that will not be deemed to be a subject-matter waiver, absent further express ruling of the Court.

6.      If the Receiver informs the party seeking disclosure that the Receiver is asserting attorney-client privilege over a specific communication, then the party seeking disclosure of that communication may submit that communication to the Court for *in camera* review. In that event, the Court anticipates receiving argument only from the party seeking disclosure and the Receiver and will not disclose the substantive of any matter submitted for *in camera* review to any other party; and

7.      If any specific communication is submitted to the Court for *in camera* review, the Court will determine *de novo*: (a) whether the communication is privileged; (b) whether any privilege has been waived; and (c) whether, if the communication is privileged and the privilege has not been waived, any conditions exist that would allow the party seeking disclosure to use that communication in this criminal case.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART the Receiver's Motion to Intervene for Limited Purposes, Motion to Expand the Scope of the Protective Order, and Motion to Claw Back Privileged Documents (ECF 57). The Court grants the Receiver limited intervention status and will enter a First Amended Protective Order that addresses the Receiver's concerns regarding File A. After entry of that document, the Receiver shall promptly make available to the Government and Defendants in this criminal case the contents of File A, and the Government and Defendants shall strictly maintain the confidentiality of all items in File A consistent with the terms and directions stated in the First Amended Protective Order. Regarding File B, the Receiver shall promptly make available to the Government and Defendants in this criminal case the contents of File B, and the Government and Defendants shall strictly maintain the confidentiality of all items in File B consistent with the terms and directions stated in this Opinion and Order. The Government and every Defendant in this case have leave to seek *de novo* reconsideration of the Court's finding in this Opinion and Order that the Receiver has not waived any attorney-client privilege or work product protection based on any prior disclosure to the Government or any Defendant in this criminal case of the contents of anything in File B. In addition, nothing in this Opinion and Order shall affect Defendant Rice's assertion of a right to disclosure of work product or privileged communications in the possession of the Receiver or the Receiver's counsel arising out of any prior joint representation of Brian Rice and the Receiver by

PAGE 16 – OPINION AND ORDER

the Receiver's counsel. This Opinion and Order neither addresses nor resolves that issue specifically relating to Defendant Rice.

**IT IS SO ORDERED**.

DATED this 17th day of December, 2020.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge