IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>    v.<br><br>**ROBERT J. JESENIK,**<br>**ANDREW N. MacRITCHIE,**<br>and **BRIAN K. RICE**,<br><br>        Defendants. | Case No. 3:20-cr-228-SI<br><br>**OPINION AND ORDER GRANTING FOUR MOTIONS TO QUASH** |

Natalie K. Wight, United States Attorney, and Ryan W. Bounds, Christopher L. Cardani, Siddharth Dadhich, and Hannah Horsley, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Ave., Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Conor Huseby, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, 101 SW Main Street, Suite 1700, Portland, OR 97204; Scott L. Mullins, MULLINS LAW OFFICE LLC, 1000 SW Broadway St., Suite 2300, Portland, OR 97205; and Per C. Olson and Megan E. McVicar, HOEVET OLSON PC, 1000 Broadway, Suite 1740, Portland, OR 97205. Of Attorneys for Defendant Robert J. Jesenik.

Michael Tremonte and Anna Maria Estevao, SHER TREMONTE LLP, 90 Broad St., 23rd Floor, New York, NY 10004; and Samuel C. Kauffman, KAUFFMAN KILBERG LLC, 1050 SW Sixth Ave., Suite 1414, Portland, OR 97204. Of Attorneys for Defendant Andrew N. MacRitchie.

Angelo J. Calfo, Patricia Anne Eakes, Damon C, Elder, and Molly A. Terwilliger, MORGAN, LEWIS & BOCKIUS LLP, 1301 Second Ave., Suite 2800, Seattle, WA 98101. Of Attorneys for Defendant Brian K. Rice.

**Michael H. Simon, District Judge.**

Andrew N. MacRitchie (MacRitchie) is one of three remaining Defendants in this criminal action. Under Rule 17(c) of the Federal Rules of Criminal Procedure, MacRitchie served subpoenas *duces tecum* on four individuals: Craig Froude; Robert Baldwin; Brian Oliver; and Michelle Papenfuss. Each subpoena demands production of the same two broad categories of documents. First, MacRitchie requests *all material* located, contained, or archived on any personal mobile device, personal email account, personal computer, or personal social media account *that relates directly or indirectly to the allegations in this case*. Second, MacRitchie seeks *all material* related to *any* potential or actual disciplinary action, sanction, disbarment, license revocation, recission or suspension, administrative proceeding, lawsuit, or criminal proceeding *involving the subpoenaed person*. Because Rule 17(c) is not intended to provide a means of discovery in criminal cases or to allow a "fishing expedition" seeking unknown evidence, MacRitchie's subpoenas fail to show the specificity required under that rule, as stated in well-established precedent. Accordingly, the Court grants all four motions to quash.

## BACKGROUND

**A.    The Charges**

In July 2020, a grand jury indicted four individuals in this action, Robert J. Jesenik (Jesenik), N. Scott Gillis (Gillis), Brian K. Rice (Rice), and MacRitchie. (Two other individuals were indicted in related actions, and they have since pleaded guilty and are awaiting sentencing. In the above-captioned action, Gillis also has pleaded guilty and is awaiting sentencing.) In July 2022, a grand jury returned a superseding indictment against Jesenik, MacRitchie, and Rice. Against these Defendants, the superseding indictment charges one count of conspiracy to commit mail and wire fraud, 28 counts of wire fraud, and one count of conspiracy to commit money

Case 3:20-cr-00228-SI    Document 369    Filed 02/10/23    Page 3 of 9

laundering. The superseding indictment also charges Jesenik with one count of making a false statement on a loan application.

The charges all relate to Defendants' alleged activities with the Aequitas group of companies, including Aequitas Management LLC, Aequitas Holdings LLC, Aequitas Commercial Finance LLC (ACF), Aequitas Capital Management Inc., and Aequitas Investment Management LLC (collectively, Aequitas). Defendants allegedly conspired to mislead investors by using ACF and other related Aequitas companies to solicit investments in notes and funds for the purported purpose of buying trade receivables, when in fact the investments were used predominantly to pay off earlier investors and defray Aequitas's operating expenses. Aequitas collapsed in early 2016, owing its investors more than $600 million. Aequitas allegedly had been insolvent since July 2014 through the date of its collapse in February 2016. In March 2016, the Securities and Exchange Commission brought a civil action in federal court, and the judge appointed a receiver to take control over the Aequitas-entity defendants in that case, their subsidiaries, and all majority-owned affiliates.

Jesenik founded Aequitas in Lake Oswego, Oregon, and served as its Chief Executive Officer. He controlled the structure of Aequitas and had ultimate decision-making authority over its various activities. MacRitchie served as an Executive Vice President and Chief Compliance Officer. He was responsible for the development and implementation of risk management and compliance processes and procedures. He also oversaw accounting, legal, and audit functions, as well as fundraising. Gillis was the Chief Operating Officer and Chief Financial Officer. He was responsible for directing Aequitas's overall financial policies and accounting functions. He established and maintained Aequitas's accounting principles, practices, procedures, and initiatives. He also prepared its financial reports and presented findings and recommendations to

PAGE 3 – OPINION AND ORDER GRANTING FOUR MOTIONS TO QUASH

the executive team. In addition, Gillis oversaw all financial functions and designed and coordinated a variety of accounting and statistical data and reports for Aequitas. Rice served as an Executive Vice President. He oversaw the solicitation of investments through registered investment advisors (RIAs) and managed Aequitas's RIAs.

Defendants and others allegedly used ACF and other Aequitas-related companies to solicit investors through the issuance of promissory notes and interests in Aequitas-created investment funds, many of which were purportedly backed by trade receivables in education, health care, transportation, and other consumer credit areas. Defendants allegedly used invested funds not only to pay Aequitas's operating costs but also to repay other investors. Defendants allegedly made material misrepresentations and omissions when soliciting and discussing the status of investments with investors and investment advisors. Defendants also allegedly used an intercompany loan to Aequitas Holdings, LLC to prop up ACF and other Aequitas entities and mislead investors, concealing from investors information that the intercompany loan was significantly under-collateralized and could not be repaid without the occurrence of several speculative contingencies. Individuals allegedly invested more than $400 million between January 2014 and February 2016.

### B.     The Subpoenas

After the Government filed its witness list (ECF 273), MacRitchie served subpoenas *duces tecum* on many of the witnesses identified by the Government, including Craig Froude, Robert Baldwin, Brian Oliver, and Michelle Papenfuss. Craig Froude previously was President of Consumer Services at Aequitas, the leader of a private equity team at Aequitas, and the Chief Executive Officer of CarePayment, a healthcare receivables company owned by Aequitas. ECF 327 at 5. Robert Baldwin previously was Director of Capital Markets at Aequitas and involved in leadership at CarePayment. *Id*. at 5-6. Brian Oliver previously was an Executive

PAGE 4 – OPINION AND ORDER GRANTING FOUR MOTIONS TO QUASH

Vice President at Aequitas and has pleaded guilty in a separate action to conspiracy to commit mail and wire fraud and money laundering in connection with his activities at Aequitas. *Id*. at 5. Michelle Papenfuss previously was a Financial Analyst and Treasury Associate at Aequitas and later began working as a Vice President of Finance for the court-appointed Aequitas receiver. ECF 354 at 2.

MacRitchie's subpoenas *duces tecum* served on these four individuals all contain the following identical two requests for production:

> **Request for Production No. 1**:
>
> All material located, contained or archived on any personal mobile device, personal email account, personal computer, or personal social media account that relates directly or indirectly to the allegations in the Superseding Indictment filed in *United States v. Jesenik, et al.*, No. 3:20-cr-00228-SI-3 (D. Or.) (attached), including any communication, material, or information reflecting a personal opinion, assessment, or belief about the same.
>
> **Request for Production No. 2**:
>
> All material related to any potential or actual disciplinary action, sanction, disbarment, license revocation, recission or suspension, administrative proceeding, lawsuit, or criminal proceeding involving you.

ECF 301-1 at 4 (subpoena to C. Froude); ECF 305-2 at 4 (subpoena to R. Baldwin); ECF 307-1 at 4 (subpoena to B. Oliver); ECF 342-1 at 4 (subpoena to M. Papenfuss).

## DISCUSSION

Rule 17(c)(1) of the Federal Rules of Criminal Procedure provides, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.

Fed. R. Civ. P. 17(c)(1).

As the Supreme Court has explained, Rule 17(c)'s authorization of a subpoena *duces tecum* "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). The party issuing a subpoena under Rule 17(c) bears the burden of showing the relevancy, admissibility, and *specificity* of the requested materials. *Id.* at 700. The Supreme Court in *Nixon* discussed with approval Judge Weinfeld's formulation in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952), that Rule 17(c) requires a showing that, among other things, the application "is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700; *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case.").

The Ninth Circuit follows this direction. Citing *Bowman Dairy*, the Ninth Circuit has stated that "a Rule 17(c) subpoena is not intended to serve as a discovery tool or to allow a blind fishing expedition seeking unknown evidence." *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (citation omitted)); *see also United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) ("Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'" (quoting *MacKey*)).[1]

Within the Ninth Circuit, "requesting entire files instead of specific documents indicates a fishing expedition." *United States v. Venecia*, 1997 WL 325328, at *3 (D. Or. May 16, 1997) (citing *Reed*). In that case, the district court refused to reauthorize a Rule 17(c) subpoena directed

---

[1] The fact that MacRitchie's subpoenas are directed to third parties rather than to the government does not change the analysis under Rule 17(c). In *Nixon*, the Supreme Court reserved judgment on the question of whether the evidentiary requirements of Rule 17(c) "apply in [their] full vigor when the subpoena *duces tecum* is issued to third parties rather than to government prosecutors." *Nixon*, 418 U.S. at 699 n.12. The Ninth Circuit, however, has answered this question. In *United States v. Fields*, the Ninth Circuit stated: "[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States." 663 F.2d 880, 881 (9th Cir. 1981).

to the Klickitat County District Attorney and quashed a Rule 17(c) subpoena directed to the Washington State Patrol because they failed the specificity requirement. *Id*. The subpoena served on the district attorney sought the "complete file and all log notes and work product" from the defendant's case. *Id.* (quotation marks omitted). The subpoena served on the Washington State Patrol also sought the defendant's complete case file as well as all accompanying case notes. *Id.* The district court found that the "subpoenas do not refer to specific documents or specific kinds of documents" and thus did "not meet the requirements of Rule 17(c)." *Id.* Similarly, in *Reed*, the Ninth Circuit upheld the district court's decision to quash a Rule 17(c) subpoena for the city's arson files in part because the appellants "did not request specific documents but sought entire arson investigation files." *Reed*, 726 F.2d at 577.

Other circuits are in accord. In *United States v. Bradford*, 806 F.3d 1151, 1155 (8th Cir. 2015), the Eighth Circuit held that a subpoena *duces tecum* under Rule 17 "should not issue based upon a party's mere hope that it will turn up favorable evidence." Similarly, the Tenth Circuit has explained: "Courts have held that requests for an entire file are evidence of an impermissible fishing expedition." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (citing the Ninth Circuit's decision in *Reed*, 726 F.2d at 577). Further, as one judge on the Fifth Circuit stated, when a district court properly concludes that a Rule 17 subpoena is merely embarking on a "fishing expedition to see what might turn up," the district court need not even review the subpoenaed documents *in camera*. *United States v. Arditti*, 955 F.2d 331, 347-48 (5th Cir. 1992) (concurring opinion).

In a case quashing a Rule 17(c) subpoena *duces tecum*, U.S. District Judge Laura Taylor Swain in the Southern District of New York explained:

> The subpoena seeks "any and all" documents relating to several
> categories of subject matter (some of them quite large), rather than

PAGE 7 – OPINION AND ORDER GRANTING FOUR MOTIONS TO QUASH

> specific evidentiary items, thus clearly indicating that Defendant seeks to obtain information helpful to the defense by examining large quantities of documents, rather than to use Rule 17 for its intended purpose—to secure the production for a court proceeding of specific admissible evidence. The party seeking a subpoena must be able to "reasonably specify the information contained or believed to be contained in the documents sought" rather than "merely hop[e] that something useful will turn up."

*United States v. Louis*, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (cleaned up).

Here, MacRitchie's first request for production seeks from each subpoena recipient "*all* material" that "relates directly or indirectly" to *any* of the allegations in this case. That is *not* a *specific* request for an item of evidence likely to be both relevant and admissible. Instead, it is a broad fishing expedition, cast in the hope that something useful will turn up. It is, thus, not within the proper scope of a Rule 17(c) subpoena.

Similarly, MacRitchie's second request seeks *all* material related to any potential or actual disciplinary action, sanction, disbarment, license revocation, recission or suspension, administrative proceeding, lawsuit, or criminal proceeding involving the subpoenaed person, regardless of whether it is relevant to this case. Like the first request, this is not a specific request for an item of evidence likely to be both relevant and admissible but simply a broad fishing expedition, again cast in the hope that something useful will turn up.

In response, MacRitchie explains that his second request seeks evidence that he might be able to use to impeach either the subpoenaed witness or even some other witness at trial. The Ninth Circuit, however, has explained that this is not generally a sufficient basis to justify a subpoena under Rule 17(c). *See Fields*, 663 F.2d at 881 ("The only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes. This use is generally insufficient to justify

PAGE 8 – OPINION AND ORDER GRANTING FOUR MOTIONS TO QUASH

the pretrial production of documents [under Rule 17(c)]."). Accordingly, MacRitchie's second request also is not within the proper scope of Rule 17(c).

## CONCLUSION

The Court GRANTS the motions to quash filed by Craig Froude (ECF 301), Robert Baldwin (ECF 305), Brian Oliver (ECF 307), and Michelle Papenfuss (ECF 342).

**IT IS SO ORDERED**.

DATED this 10th day of February, 2023.

<div style="text-align: right;">
<i>/s/ Michael H. Simon</i><br>
Michael H. Simon<br>
United States District Judge
</div>